617 N.W.2d 310 (2000)
463 Mich. 378
In re INVESTIGATION OF MARCH 1999 RIOTS IN EAST LANSING.
People of the State of Michigan, Plaintiff-Appellant/Cross-Appellee,
v.
Anthony David Pastor, Defendant, and
Federated Publications, Inc., doing business as Lansing State Journal; WXYZ Channel 7; WZZM-TV; WMMT-TV3; WILX-TV; WLNS-TV; State News, Inc.; The Detroit Free Press, Inc.; WJBK-TV; WKBD-TV, and WJRTTV, Appellees/Cross-Appellants.
Docket No. 116731.
Supreme Court of Michigan.
September 26, 2000.
*311 Stuart J. Dunnings III, Ingham County Prosecutor, and Samuel R. Smith, Circuit Court Unit Chief, Lansing, MI, for the people.
Foster, Swift, Collins & Smith, P.C. (by Charles E. Barbieri), Lansing, for the petitioner/appellee/cross-appellant.
Law Offices of Daw Phillips-Hertz (by Dawn Phillips-Hertz, Lisa Rycus Mikalonis, and Mireille L. Phillips), Troy, amici curiae for the Michigan Press Association.

Opinion
PER CURIAM.
The district court approved the issuance of investigative subpoenas to compel various media outlets to produce videotapes and photographs. The circuit court quashed the subpoenas and the Court of Appeals affirmed. We affirm the judgments of the circuit court and the Court of Appeals because the pertinent statutory language clearly provides that subpoenas may not be issued to the media in the circumstances of this case.

I
The evening of March 27-28, 1999, saw an outbreak of criminal activity in East Lansing. After the Michigan State University men's basketball team was eliminated from the National Collegiate Athletic Association tournament, crowds formed at several places in the city. The ensuing events have often been characterized as a riot.
Newspapers and television stations from the Lansing area and from other Michigan cities sent staff to the scene to report on what was occurring. These persons videotaped and photographed much of what took place.
In the aftermath, the Ingham County Prosecuting Attorney sought to identify as many participants as possible. To that end, he asked the media to share their videotapes and photographs. It is agreed that the media voluntarily provided copies of videotapes and photographs that had been used in news reports, but would not allow the prosecuting attorney to have access to materials that had not been published.
The prosecuting attorney then attempted to obtain the unpublished material through the use of subpoenas to the media. *312 Subpoenas under MCR 2.506[1] were approved by the district court.[2] Initially, the prosecuting attorney also obtained circuit court approval for the issuance of investigative subpoenas under 1995 PA 148, M.C.L. § 767A.1 et seq.; MSA 28.1023A(1) et seq.
The district court denied a motion to quash the subpoenas issued pursuant to MCR 2.506. The circuit court affirmed that determination, finding inter alia that no First Amendment privilege precluded issuance of subpoenas under the court rule. However, the circuit court did quash the investigative subpoenas that it had issued under M.C.L. § 767A.1 et seq.; MSA 28.1023A(1) et seq.
The media sought to appeal, but the Court of Appeals denied their application for leave to appeal.[3]
On further application to this Court, we issued an order stating that "[t]he district court erred in allowing use of a subpoena under MCR 2.506 as a discovery procedure in a criminal case." In re Subpoenas to News Media Petitioners, 459 Mich. 1241, 593 N.W.2d 558 (1999). We remanded the case to the district court "for consideration of the prosecuting attorney's request for investigative subpoenas under M.C.L. § 767A.1 et seq.; MSA 28.1023A(1) et seq. Id.
On remand, the district court authorized the prosecuting attorney to issue investigative subpoenas to three newspapers[4] and seven television stations.[5] The subpoenas directed each recipient to produce videotape and photographs of the disturbances in East Lansing.[6]
The respondents filed a motion to quash the investigative subpoenas, but the district court denied the motion.
On appeal, the circuit court agreed with the district court that the First Amendment did not provide a basis on which to quash the investigative subpoenas. The circuit court quashed the subpoenas, nonetheless. The court ruled that the subpoenas were improper under subsection 6(6) of the statute governing investigative subpoenas.[7] MCL 767A.6(6); MSA *313 28.1023A(6)(6). That subsection, quoted in full later in this opinion, limits the circumstances under which a media representative is subject to an investigative subpoena.
The Court of Appeals granted leave to appeal to the prosecuting attorney, but affirmed the judgment of the circuit court.[8] 240 Mich.App. 369, 613 N.W.2d 342 (2000).
The prosecuting attorney has now applied to this Court for leave to appeal.[9]

II
As noted above, investigative subpoenas are governed by 1995 PA 148, M.C.L. § 767A.1 et seq.; MSA 28.1023A(1) et seq. The proper interpretation of a statutory provision is a question of law that we decide de novo. People v. Burgenmeyer, 461 Mich. 431, 436, n. 10, 606 N.W.2d 645 (2000); People v. Morey, 461 Mich. 325, 329-330, 603 N.W.2d 250 (1999).
MCL 767A.6(6); MSA 28.1023A(6)(6), the subsection at issue in this case, provides:
A reporter or other person who is involved in the gathering or preparation of news for broadcast or publication is not required to disclose the identity of an informant, any unpublished information obtained from an informant, or any unpublished matter or documentation, in whatever manner recorded, relating to a communication with an informant, in any inquiry conducted under this chapter. A reporter or other person who is involved in the gathering or preparation of news for broadcast or publication is subject to an inquiry under this chapter only under the following circumstances:
(a) To obtain information that has been disseminated to the public by media broadcast or print publication.
(b) If the reporter or other person is the subject of the inquiry.
The second sentence of this subsection plainly states that a person who is involved in the gathering or preparation of news for broadcast or publication is subject to an investigative subpoena only under two circumstances. Neither is present in this case. The fact that the Legislature saw fit to place this controlling statement in the second sentence prompted the circuit court to characterize the statute as "unambiguously though poorly drafted."
In that respect, we agree with the circuit court. We also accept the analysis of the Court of Appeals, which further stated:
We agree with the trial court's finding in regard to the near absolute media exemption clearly provided by the second sentence of this subsection. As the media argue, the second sentence of subsection 6 provides a threshold test that must be satisfied before a reporter will be compelled to respond to an investigative subpoena. Pursuant to this test, a reporter, pursuing the reporter's profession, is subject to an inquiry by use of investigative subpoena only if the prosecutor seeks to obtain previously *314 published information or if the reporter is the subject of the prosecutor's investigation. The plain language of this sentence can be interpreted in no other fashion. [People v. Borchard-Ruhland, 460 Mich. 278, 284, 597 N.W.2d 1 (1999) ].
Although conceding that this sentence, with its exceptions, is unambiguous, the prosecutor contends that it cannot be viewed in a vacuum, and instead must be interpreted in light of the first sentence of subsection 6, which references information concerning informants. The first sentence, on its face, purports to provide an absolute privilege against disclosure of informant-related material in any inquiry conducted by use of investigative subpoenas. The prosecutor submits that the second sentence must be viewed as a modification of the first, essentially asserting that the two conditions allowing inquiry are exceptions to the informant information privilege. Contrary to the prosecutor's assertions, however, we again agree with the reasoning of the media that the two sentences of subsection 6 in fact concern distinctly separate concepts.
As the media argue, the absolute privilege of the first sentence, preventing compelled disclosure of informant-related information, does not even come into play unless the threshold of the second sentence is passed and an inquiry is authorized through satisfaction of one of the two exceptions. In other words, when considering a prosecutor's request to issue an investigative subpoena to a reporter, a court should first apply the second sentence and determine whether either of the two exceptions apply. If not, the subpoena should not issue. However, if an exception is satisfied, the subpoena may issue. If a later challenge is raised regarding the nature of the information sought by the prosecutor, the court should then apply the first sentence and determine whether the materials desired relate to information about, or received from, an informant. If not, the court may order compliance with the subpoena. However, if the information sought is related to a reporter's contact with an informant, the court should give effect to the absolute privilege against disclosure of such subject matter.
The prosecutor argues that the legislators would not put a partial exemption for reporters in the first sentence and a broader exemption in the second because such structure is illogical. As indicated by the above discussion, however, while perhaps unusual in sentence order, the provision is hardly illogical. The prosecutor's argument of grammatical inconsistency is not supported by any legal authority suggesting that the structure of this provision is improper. Although subsection 6 may arguably have been clearer had the sentence order been reversed, given our indication that the second sentence must be considered first and the first second, that the plain language of the provision is nevertheless wholly understandable leads us to the conclusion that the statute is not ambiguous. Accordingly, judicial construction, requested by the prosecutor, is neither necessary nor appropriate. Id. [240 Mich.App. at 376-378, 613 N.W.2d 342 (emphasis in original).]
In the present case, the media representatives who shot the disputed videotapes and photographs were gathering the news. MCL 767A.6(6); MSA 28.1023A(6)(6). This material has not been disseminated to the public by media broadcast or print publication. MCL 767A.6(6)(a); MSA 28.1023A(6)(6)(a). And the reporters themselves are not the subject of the inquiry. MCL 767A.6(6)(b); MSA 28.1023A(6)(6)(b). Thus, under the plain language of the statute, these media representatives are not subject to an investigative *315 subpoena under 1995 PA 148, M.C.L. § 767A.1 et seq.; MSA 28.1023A(1) et seq.[10]
For these reasons, we affirm the judgment of the circuit court and the Court of Appeals.[11] MCR 7.302(F)(1).
WEAVER, C.J., and MICHAEL F. CAVANAGH, MARILYN J. KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.
NOTES
[1] MCR 2.506 is the general rule governing the issuance of subpoenas. It appears in a subchapter pertaining to trials, subpoenas, and juries in civil cases, but the rule also applies generally in criminal cases. MCR 6.001(D). However, discovery in criminal cases is governed by MCR 6.201.
[2] We have only a portion of the lower court records. However, there appears to be no dispute regarding the chronology of events in this case.
[3] Unpublished order, entered April 26, 1999 (Docket No. 219040). To the extent that the Court of Appeals interpreted M.C.L. § 767A.6; MSA 28.1023A(6) at that time, its consideration was limited to whether M.C.L. § 767A.6; MSA 28.1023A(6) protected the sought material from disclosure under subpoenas served pursuant to MCR 2.506, which was the scope of the issue then before it. The only conclusion that the Court of Appeals expressed regarding M.C.L. § 767A.6(6); MSA 28.1023A(6)(6) is that it does not provide a basis for quashing MCR 2.506 subpoenas. That is an issue apart from our present inquiry, and we do not review it at this time.
[4] The order of the district court named the Lansing State Journal, the State News, and the Detroit Free Press.
[5] The order named WJBK (Channel 2, located in Southfield), WMMT (Channel 3, Kalamazoo), WLNS (Channel 6, Lansing), WXYZ (Channel 7, Southfield), WJRT (Channel 12, Flint), WZZM (Channel 13, Grand Rapids), and WKBD (Channel 50, Southfield).
[6] By way of example, the file contains the subpoena to the Lansing State Journal. It requires the newspaper to produce "[a]ny and all original video and still photographic film footage, including Associated Press photographs obtained, not limited to only broadcast footage, taken by any employee and/or agent of the above listed news agency concerning the civil disorder/riot in the City of East Lansing and the campus of Michigan State University beginning on March 27, 1999 at approximately 10:00 p.m. and until the early morning hours of March 28, 1999."
[7] Despite the earlier order by the Court of Appeals indicating that this subsection would not protect the sought information from disclosure pursuant to subpoenas served under authority other than the statute governing investigative subpoenas, the circuit court's ruling did not violate the law of the case doctrine. This is so because the issue on which the circuit court ruled (i.e., whether the sought information was protected by M.C.L. § 767A.6(6); MSA 28.1023A(6)(6) from disclosure compelled by investigative subpoena) was not addressed by the Court of Appeals order denying the earlier application for leave.
[8] The media cross-appealed on the issue of a First Amendment privilege. In light of its decision to affirm on the statutory ground, the Court of Appeals did not reach the constitutional question. 240 Mich.App. at 380-181, 613 N.W.2d 342.
[9] The media have filed an application for leave to appeal as cross-appellants in this Court, again seeking review of the First Amendment question. Like the Court of Appeals, we decide this case on a statutory basis, and thus have no occasion to reach the constitutional issue. We also have received from the Michigan Press Association a motion for leave to appear as amicus curiae, which we grant.
[10] The prosecuting attorney argues that the two sentences of M.C.L. § 767A.6(6); MSA 28.1023A(6)(6) should be read together, and with the second sentence subordinate to the first. In other words, the prosecutor understands the statute to say that reporters are protected from investigative subpoenas to obtain the identity of informants or their statements, unless the information has already been disseminated publicly or the reporter has become the focus of the investigation. The prosecutor says that such an interpretation makes practical sense, is consistent with views expressed by the sponsoring legislator, comports with the principle that privileges are narrowly construed, and matches the approach taken by the Legislature in another statute concerning a qualified privilege for reporters. MCL 767.5a; MSA 28.945(1). The media respond, point by point. While the approach urged by the prosecuting attorney could have been a sensible alternative for the Legislature to adopt, it does not reflect what the Legislature actually did adopt in 1995 PA 148. The second sentence of M.C.L. § 767A.6(6); MSA 28.1023A(6)(6) states that a reporter is "subject to an inquiry under this chapter only under the following circumstances...." (Emphasis added.) This means the prosecuting attorney's interpretation is not viable, because the language of the second sentence itself shows that the second sentence applies to any request for information under chapter VIIA, not only as an exception to the first sentence.
[11] The application for leave to appeal as cross-appellant is denied. See footnote 9.