Hathaway, J.
odissenting). I respectfully dissent from the majority opinion which holds that the trial court did not abuse its discretion by precluding plaintiffs expert witness’s testimony. In performing its gatekeeping role, a trial court is required to consider all factors enumerated in MCL 600.2955 before it strikes an expert witness, and it is an abuse of discretion for the trial court to fail to do so. Clerc v Chippewa Co War Mem Hosp, 477 Mich 1067 (2007). In this case, the trial court reviewed only one § 2955 factor to determine if plaintiffs expert’s testimony had an indicia of reliability, rather than examining all of the § 2955 factors to determine if any one of the factors established an indicia of reliability. Based on this narrow review, the trial court precluded plaintiffs expert from testifying because plaintiff did not present medical articles on the growth rate of cancer in support of her position. By limiting its inquiry to only one enumerated criterion of MCL 600.2955, the trial court abused its discretion. Because the majority ignores the plain language of MCL 600.2955, which mandates that a trial court review all the enumerated factors within § 2955 to determine if any one § 2955 factor established an indicia of reliability, as well as this Court’s clear directive in Clerc, I must respectfully dissent.
Accordingly, I would reverse the Court of Appeals judgment and remand this matter to the trial court for further proceedings consistent with this opinion.
I. FACTS AND PROCEEDINGS
This case involves allegations of medical malpractice. Plaintiff, Tracy Edry, alleges that defendant, Dr. Marc *646 Adelman, violated the standard of care and committed professional negligence as a result of his failure to timely diagnose and treat plaintiffs breast cancer. Plaintiff alleges that the delay in diagnosis and the failure to timely treat her cancer resulted in an unnecessary progression of her cancer, which, in turn, caused a need for more invasive treatment and a loss in her chance of survival. The plaintiff pled two separate claims, one for loss of opportunity to survive and one for a present injury. At issue before us is whether the trial court properly precluded plaintiffs oncology expert from testifying on the issue of proximate causation on both the loss of opportunity to survive claim as well as the claim for a present injury.
The issue was initially brought before the trial court by way of defendants’ “motion for summary disposition premised on plaintiffs inability to prove a greater than 50% loss of opportunity to survive, or alternatively motion for MRE 702 evidentiary hearing.” At the hearing, the trial court ruled that the plaintiffs expert, Dr. Barry Singer, was precluded from testifying at trial. The transcript reflects that the court did not conduct an evidentiary hearing under MRE 702, but, instead, briefly summarized its understanding of the parties’ positions on the record. The court stated that it was familiar with its gatekeeping function and the requirements of MRE 702 and MCL 600.2955. The court then ruled that Dr. Singer’s testimony was unscientific because plaintiff had failed to produce articles to support his position; however, it did not address any of the other § 2955 criteria. The trial court did not rule on defendants’ motion for summary disposition to dismiss plaintiffs complaint, nor did it grant defendants’ request for an MRE 702 evidentiary hearing; rather, it ruled that it was striking plaintiffs expert witness. The trial court stated:
*647 This Court’s review of Singer’s deposition transcript reveals that he is an experience — he is experienced in what likely will qualify as an expert in oncology. However, Singer recites an opinion, to wit; that plaintiff had a 20% chance of survival at the time of diagnosis, which plaintiff fails to establish this — to this Court as supported and reliable in the scientific community. In other words, it is speculation.
Therefore, for the reasons stated herein, and those outlined by defendants, the Court grants defendant’s motion under MRE 702 and Daubert [v Merrell Dow Pharm, Inc, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993)]. Defendants may present an order consistent with this opinion, indicating that plaintiffs witness may not testify because it appears his testimony is unreliable. Have a good day.
Ms. Siegan [defense counsel]: Your Honor, may I ask for clarification? Does that mean that the Court is granting summary disposition of the whole case?
The Court-. I’m leaving plaintiff to figure that out. Have a good day.
The defendants then brought a second motion, this time entitled “[m]otion for dismissal for [plaintiffs] failure to meet her burden of proof.” Plaintiff brought a “[m]otion to set aside [the] order [to strike her witness].” In support of her motion, plaintiff submitted four medical articles concerning the staging of cancer. Two of the articles were publications from the American Cancer Society (ACS), discussing the various stages of breast cancer as set forth by the American Joint Committee on Cancer (AJCC). Both the plaintiffs and the defense’s expert agreed that the AJCC was a reliable source on the staging of breast cancer. Plaintiffs counsel argued that the expert’s opinion was supported by and flowed logically from that literature. Defense counsel argued that because the American Cancer Society articles that contained the AJCC standards could be found on a public website they were not peer reviewed or scientific. Defendants also argued that the *648 articles did not support plaintiffs theory; that defendants’ expert disputed plaintiffs expert’s testimony; and, finally, that plaintiffs expert’s testimony was contradicted by the AJCC standards.
The trial court again did not conduct an evidentiary hearing. The trial court only addressed the issue of plaintiffs literature, this time finding that it was not accompanied by expert testimony and that the literature did not appear to support plaintiffs theory. The court then ruled that it was granting defendants’ motion to dismiss.
The Court of Appeals affirmed the trial court holding and stated:
In this case, Dr. Singer’s testimony clearly contradicted the AACJ [sic: AJCC] standards. Additionally, defendants’ expert, Dr. [Joel] Appel, testified that it was medically improper to simply use the number of positive lymph nodes, as Dr. Singer had done, to assess the chance of survival. Dr. Appel also claimed that Dr. Singer’s opinion that plaintiff had less than a 20 percent chance of survival due to the number of positive lymph nodes was not based on any scientific, technical, or specialized knowledge, was not generally accepted within the scientific community, and could not be substantiated by any medical evidence. At his deposition, Dr. Singer testified that his opinion was supported by the medical literature. Plaintiff was given an opportunity to submit the articles that Dr. Singer claimed supported his opinion, but never did so. Instead, plaintiff presented generalized Internet articles that did not clearly support Dr. Singer’s testimony. In particular, none of the articles that plaintiff submitted indicated that a person with plaintiff’s pathology (i.e., tumor size and number of positive nodes) had less than a 20 percent chance of survival. For these reasons, the trial court did not abuse its discretion in determining that Dr. Singer’s testimony was not shown to be sufficiently accepted in the scientific community to be reliable and, therefore, was not admissible. Without Dr. Singer’s testimony, plaintiff had no other evidence showing that she sustained a loss of the opportunity to survive that *649 was greater than 50 percent. [Edry v Adelman, unpublished opinion per curiam of the Court of Appeals, issued December 23, 2008 (Docket No. 279676), p 4.]
Plaintiff sought leave to appeal in this Court, and we granted leave asking the parties to include “among the issues to be briefed: (1) whether Wickens v Oakwood Healthcare Sys, 465 Mich 53 [631 NW2d 686] (2001), was correctly decided; and (2) whether the lower courts erred in finding that Dr. Singer’s testimony was inadmissible under MRE 702.[1]
II. STANDARD OF REVIEW
This case involves review of a trial court’s ruling concerning the admissibility of an expert’s opinion which this court reviews for an abuse of discretion. Craig v Oakwood Hosp, 471 Mich 67, 76; 684 NW2d 296 (2004). The case also presents issues of statutory interpretation. Statutory interpretation is a question of law that is reviewed de novo. In re Investigation of March 1999 Riots in East Lansing, 463 Mich 378, 383; 617 NW2d 310 (2000). Finally, we review the trial court’s grant of summary disposition pursuant to MCR 2.116(C)(10) de novo. Maiden v Rozwood, 461 Mich 109; 597 NW2d 817 (1999).
III. ANALYSIS
The first issue to be addressed is whether the trial court abused its discretion by precluding plaintiff’s oncology expert from testifying on the issue of proximate causation. The majority opines that plaintiffs expert was properly stricken. I respectfully disagree. I believe that the majority’s analysis and conclusion are *650 erroneous because they completely ignore Clerc as well as the clear and unambiguous language of MCL 600.2955.
I agree with the majority that the trial court must engage in a preliminary gatekeeping function to determine whether to admit expert testimony. I disagree with the majority on what factors are to be considered when a court makes such a determination. This Court has already addressed this precise issue in Clerc, holding that all the § 2955 factors need to be examined before an expert’s testimony can be precluded, and it is an abuse of discretion to fail to do so. I see no compelling reason to depart from the clear directive of Clerc in the matter before us.
Clerc was a medical malpractice case involving lung cancer. The issue presented on appeal was whether the trial court had abused its discretion by striking the plaintiffs expert because the plaintiff had failed to produce scientific literature to support his claim. Clerc opined on the proper factors to be evaluated when considering whether to strike expert witness testimony. Clerc held that the admissibility of expert testimony is be evaluated under MRE 702, MCL 600.2169, and MCL 600.2955. In reversing the trial court’s decision to strike the plaintiffs expert witness because it was an abuse of discretion, this Court held:
Consistent with this role, the court "shall" consider all of the factors listed in MCL 600.2955(1). If applicable, the proponent must also satisfy the requirement of MCL 600.2955(2) to show that a novel methodology or form of scientific evidence has achieved general scientific acceptance among impartial and disinterested experts in the field.

Here, the trial court did not consider the range of indices of reliability listed in MCL 600.2955. Rather, it focused on its concern that plaintiff could not present specific studies 
*651
on the growth rate of untreated cancer. Therefore, the court • did not fulfill its gatekeeping role because it failed to consider other factors such as, for example, whether the methodology used by plaintiff’s experts is “generally accepted within the relevant expert community, ” is relied upon as a “basis to reach the type of opinion being proffered” by experts in the field, or is “relied upon by experts outside of the context of litigation.” MCL 600.2955(l)(e)-(g).

Accordingly, we remand to the Chippewa Circuit Court to complete the proper inquiry.[2]
I find Clerc indistinguishable from the case before us. In Clerc the plaintiff argued that studies that the trial court demanded did not exist because no such study had ever been conducted. In the case before us the plaintiff argues that there are no studies with the level of specificity that the trial court demanded. In fact, in the literature submitted by plaintiff, the American Cancer Society discusses Stage IIIC, which is the stage of cancer that plaintiff had, and notes that “survival rates are not yet available for Stage IIIC breast cancer because this stage was defined only a few years ago.”[2]
[3]
In Clerc this Court remanded the case to the trial court to consider all the factors enumerated in § 2955 because the presence or absence of scientific studies or literature is not dispositive as it is not the only factor used to evaluate reliability. Other factors are equally important, and medical literature is not going to exist in all circumstances. This same rationale and logic is applicable to this case. This case should be similarly remanded to the trial court to consider all the factors of § 2955 because while there may not be literature to *652 support plaintiffs expert’s opinion, there may be another § 2955 factor that provides the necessary indicia of reliability for it.
Section 2955 is specific in its directives. The statute provides:
(1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:
(a) Whether the opinion and its basis have been subjected to scientific testing and replication.
(b) Wfhether the opinion and its basis have been subjected to peer review publication.
(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.
(d) The known or potential error rate of the opinion and its basis.
(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, “relevant expert community” means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.
(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.
(g) "Whether the opinion or methodology is relied upon by experts outside of the context of litigation.
*653 (2) A novel methodology or form of scientific evidence may be admitted into evidence only if its proponent establishes that it has achieved general scientific acceptance among impartial and disinterested experts in the field.
(3) In an action alleging medical malpractice, the provisions of this section are in addition to, and do not otherwise affect, the criteria for expert testimony provided in section 2169. [Emphasis added.]
The well accepted rules of statutory construction apply here. Assuming that the Legislature has acted within its constitutional authority, the purpose of statutory construction is to discern and give effect to the intent of the Legislature.[4] The Court must interpret the language of a statute in a manner which is consistent with the legislative intent.[5] In determining the legislative intent, we must first look to the actual language of the statute.[6] As far as possible, effect should be given to every phrase, clause, and word in the statute.[7] (Emphasis added.)
Section 2955 states that the court “shall consider all” the factors. All of the § 2955 factors must be reviewed to determine if any one of the factors demonstrate an indicia of reliability.[8] Moreover, pursuant to § 2955(2) expert testimony that is considered novel in methodology or form that does not meet the § 2955(1) factors may be admitted into evidence.[9] The trial court in this matter failed to review all the § 2955(1) factors and failed to consider whether this testimony met the criteria of § 2955(2). *654 Thus, the trial court failed in its gatekeeping duties and failed to follow the clear mandates of the statute. Accordingly, remand to the trial court is necessary because the trial court abused its discretion in making its decision. On remand, the court must consider all the factors in § 2955(1) and (2). If, after consideration of all the factors, the court finds that plaintiff’s expert’s opinion does not have the threshold indicia of reliability, the court may preclude the testimony. Conversely, if there are threshold indicia of reliability, there is no basis to preclude the testimony.
Further, I am troubled by the majority’s failure to make clear to the lower courts and litigants that there is a distinction between the proper role of the court as a gatekeeper, and the role of the trier of fact. Section 2955 imposes a gatekeeping function; it cannot mandate or permit the court to usurp the role of the trier of fact. Weighing the credibility of witnesses and determining which expert opinion is more persuasive are questions of fact for the jury, not ones to be usurped by the gatekeeping function of the court. The right to a jury trial, when demanded by a party in a civil action, is a constitutionally protected right.[10] This right cannot be usurped by legislative mandates. [11] Determining the credibility of a witness is always a question of fact to be decided by the trier of fact.[12] I decline to interpret the statute in the case before us in a manner contrary to constitutional constraints.
*655 I am also troubled by the lower courts’ pejorative references to articles and publications being publicly available on the Internet, as well as the majority’s assertion that plaintiffs literature was not peer reviewed. First, the fact that literature can be accessed on the Internet is not an indication that it is unreliable. This Court’s opinions are available on a public website. Most published medical articles, studies, and journals are available on publicly accessible websites. It is the source of a publication that must be considered, not whether it is available on line. Two of the articles referred to as “website” literature are from the American Cancer Society. Second, while the majority asserts that plaintiffs literature was not peer reviewed, the statistics quoted in the American Cancer Society literature are from the AJCC, which is a source that both parties and the trial court acknowledged is a reliable source. The AJCC’s statistics are peer reviewed by the medical community.
Moreover, I disagree that summary disposition was properly granted. Summary disposition has been granted in this matter without a reference by the trial court to plaintiffs second expert, Dr. Rainna Brazil, who allegedly supports her proximate causation theory. In granting the motion to dismiss, which I can only presume should have been entitled a motion for summary disposition, the trial court never mentioned or discussed Dr. Brazil. Further, the Court of Appeals never addressed Dr. Brazil, and recognized that the basis for the trial court’s disposing of the case was not clear. I am unwilling to affirm the trial court’s decision to grant summary disposition without an explanation by the trial court of the basis for the ruling. While I recognize that the majority has come to a conclusion regarding the admissibility of Dr. Brazil’s testimony, I find it inappropriate to do so absent review of this issue *656 by the trial court or the Court of Appeals. On remand I would direct the trial court to set forth the basis for rejecting Dr. Brazil’s testimony so it can be determined if summary disposition was appropriate.
Finally, the majority in this case opines that a reduced chance of survival is not a cognizable injury under MCL 600.2912a(2), citing Wickens v Oakwood Healthcare Sys, 465 Mich 53; 631 NW2d 686 (2001). Wickens held that the language of § 2912a(2) only allows recovery for injuries that have already been suffered, thus precluding any and all claims for loss of opportunity absent a present injury. I have serious concerns that Wickens failed to properly interpret § 2912a(2) and joined in the grant of leave to appeal in this case which asked the parties to brief whether Wickens was correctly decided. However, given the majority’s holding, I find this issue to be premature and leave the exploration of this important issue to a future date.
IV CONCLUSION
I respectfully dissent from the majority opinion, which holds that the trial court did not abuse its discretion by precluding plaintiffs expert witness’s testimony. In serving in its gatekeeping role, a trial court is required to consider all factors enumerated in MCL 600.2955 before it strikes an expert witness, and it is an abuse of discretion for the trial court to fail to do so. In this case, the trial court reviewed only one § 2955 factor. The trial court precluded plaintiffs expert from testifying because plaintiff did not present medical articles on the growth rate of cancer in support of her position. By limiting its inquiry to only one enumerated criterion of MCL 600.2955, the trial court abused its discretion because it failed to consider all the indices of *657 reliability in MCL 600.2955. Because the majority ignores the plain language of MCL 600.2955, which mandates that a trial court review all the enumerated factors within § 2955, as well as this Court’s clear directive in Clero, I must respectfully dissent.
Accordingly, I would reverse the Court of Appeals judgment and remand this matter to the trial court for further proceedings consistent with this opinion.
Weaver, J., concurred with Hathaway, J.

 Edry v Adelman, 485 Mich 901 (2009).

 Clerc, 477 Mich at 1068 (emphasis added).

 American Cancer Society, Detailed Guide: Breast Cancer, How Is Breast Cancer Staged? (September 18, 2006, revision), reproduced in plaintiff-appellant’s appendix, pp 153a-156a, citing AJCC statistics.

 Potter v McLeary, 484 Mich 397, 410; 774 NW2d 1 (2009), citing Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999).

 Potter, 484 Mich at 411.

 Id. at 410.

 Sun Valley, 460 Mich at 237.

 Clerc, 477 Mich at 1068.

 Section 2955(2) provides:
*654 A novel methodology or form of scientific evidence may be admitted into evidence only if its proponent establishes that it has achieved general scientific acceptance among impartial and disinterested experts in the field.

 Const 1963, art 1, § 14.

 Whitson v Whiteley Poultry Co, 11 Mich App 598; 162 NW2d 102 (1968).

 Travelers Indemnity Co v Puffin, 384 Mich 812 (1971).